## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————

| | |
|---|---|
| DARYL AGNEW, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | )   Civil Action No. 15-00340 (ABJ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

———————————————————)

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, STAY AND DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully move this Court to dismiss Plaintiffs' Complaint. In the alternative, Defendants move to dismiss the claims of Mr. Agnew and stay the claims of Mr. Bugg Bey. The grounds and reasons for granting Defendants' motion are set forth in the accompanying Memorandum of Points and Authorities and proposed Order.

DATE:  May 29, 2015          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

/s/ Toni M. Jackson
TONI M. JACKSON [D.C. Bar No. 453765]
Chief, Equity Section
441 4th Street, N.W.
6th Floor South
Washington, DC 20001
Telephone:  (202) 442-9784
E-mail:  toni.jackson@dc.gov

/s/ Chad Copeland
CHAD COPELAND [D.C. Bar No. 982119]
Assistant Attorney General
441 Fourth Street, N.W.
6th Floor South
Washington, DC 20001
Telephone:  (202) 724-6623
Facsimile:  (202) 741-8880
Email:  chad.copeland@dc.gov

/s/ Gary Feldon
GARY FELDON [D.C. Bar No. 987142]
Assistant Attorney General
441 Fourth Street N.W.
6th Floor South
Washington, DC 20001
Telephone:  (202) 724-5691
Facsimile:  (202) 730-0640
Email:  gary.feldon@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DARYL AGNEW, *et al.*,      ) | |
|      ) | |
|    Plaintiffs,      ) | |
|      ) | Civil Action No. 15-00340 (ABJ) |
|    v.      ) | |
|      ) | |
| DISTRICT OF COLUMBIA, *et al.*,      ) | |
|      ) | |
|    Defendants.      ) | |
|      ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS OR, IN THE ALTERNATIVE, STAY AND DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants hereby move the Court to dismiss Plaintiffs' Complaint for Judgment and Money Damages and Injunctive Relief and Equitable Relief and Declaratory Relief and Jury Demand ("Complaint"). In the alternative, Defendants move the Court to stay the claims of Mr. Bugg Bey and dismiss the claims of Mr. Agnew.

In this lawsuit, Plaintiffs challenge the legality of their arrests and, in the case of Mr. Agnew, the subsequent prosecution. The basis of the Complaint is a series of Constitutional challenges to D.C. Code § 22-1307(a), which, in relevant part, makes it unlawful for a person to "crowd, obstruct, or incommode … [a] sidewalk … and [t]o continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding."[1] Specifically, Plaintiffs assert false arrest and

---

[1] Although Plaintiffs do not cite to a particular subsection of D.C. Code § 22-1307, it is clear from their allegations that they are challenging the validity of subsection (a) of that law. Plaintiffs refer to D.C. Code § 22-1307 as the "incommoding statute" throughout the Complaint. *See, e.g.*, Compl., ¶ 1 (describing the instant action as being brought on behalf of Plaintiffs and others arrested and prosecuted "under the District's unconstitutional 'incommoding' statute, D.C. Code § 22-1307"). However, only subsection (a) refers to incommoding. Subsection (b) concerns "engag[ing] in a demonstration in an area where it is otherwise unlawful to demonstrate and to" disregard a law enforcement officer's instruction to cease doing so. D.C. Code § 22-1307(b). Neither Plaintiff

malicious prosecution claims premised on facial and as-applied challenges to the statute under the First and Fifth Amendments.

The allegations of the Complaint, however, fall far short of pleading facts sufficient to establishing claims under any of these causes of action. Indeed, as explained herein, a bevy of problems exist as to each of Plaintiffs' claims. First, the Court should decline to exercise jurisdiction over Mr. Bugg Bey's claims, as they are the subject of parallel litigation in the District of Columbia Superior Court. Second, both Plaintiffs' false arrest claims fail because the allegations in the Complaint demonstrate that there was probable cause for their arrest. Third, Plaintiffs fail to plead the elements necessary to maintain a claim for malicious prosecution. Finally, all claims against Cathy Lanier, the Chief of Police of the Metropolitan Police Department ("MPD"), should be dismissed because the claims against her in her official capacity are redundant and the claims against her in her personal capacity are barred by qualified immunity. The flaws in Plaintiffs' pleading are more fully described herein and require dismissal of Plaintiffs' case.

## RELEVANT FACTUAL BACKGROUND

Mr. Agnew was arrested by MPD officers on December 24, 2014. Compl., ¶¶ 84-101. On that evening, he acknowledges that he was standing "in the yard and on the sidewalk" with the mother of his child when a law enforcement officer told them to move. Compl., ¶¶ 85-88. Instead of following the officer's instruction, Mr. Agnew asserted that "they had every right to be there." *Id.*, ¶ 92. The officer told them to move a second time and explained that "they were 'blocking passage.'" *Id.*, ¶ 93. Mr. Agnew again asserted that "they had every right to be there." *Id.*, ¶ 94.

---

alleges that he was arrested in connection with a demonstration or has been deterred from protesting. *See generally* Compl.

2

At that point, he was arrested for violating D.C. Code § 22-1307(a). *Id.*, ¶ 96. Mr. Agnew was later charged in Superior Court based on a sworn account of the police officer; however, his case was dismissed for want of prosecution in March 2015, when the prosecutor's motion for a continuance was denied. Compl., ¶¶ 102-104; Ex. 1 (Docket in *District of Columbia v. Daryl Agnew*, Case No. 2015 CDC 00378 (D.C. Sup. Ct.)).[2]

Mr. Bugg Bey was arrested on Friday, May 9, 2014, while standing on a strip of private property between the sidewalk and a fence, talking with a group of people. *Id.*, ¶ 105-106. They were standing in such a way that, "had any pedestrians happened along, Mr. Bugg Bey and his friends would have [had to] . . . ma[k]e way for them to pass." *Id.*, ¶ 112.  An MPD officer informed Mr. Bugg Bey and the others that "they were 'blocking passage'" and instructed them to disperse. *Id.*, ¶ 113. Although the group did disperse, Mr. Bugg Bey and two or three other people soon returned to the same place and resumed "chatting on and near the walk." *Id.* 114 & 117. When the officer returned after approximately an hour and saw that the group had returned, he approached them. *Id.*, ¶¶ 115 & 120. All the other members of the group left, but Mr. Bugg Bey remained. *Id.*, ¶ 120. He was then arrested for violating D.C. Code § 22-1307(a). *Id.*, ¶ 121. No criminal prosecution followed, as his case was "no-papered." *Id.*, ¶ 130.

On June 6, 2014, Mr. Bugg Bey filed suit against the District of Columbia and his arresting officer in District of Columbia Superior Court. *See* Ex. 2 (Complaint in *Bey v. Government of the District of Columbia*, Case No. 2014 CA 003511 (D.C. Sup. Ct.)). In that case Mr. Bugg Bey likewise challenges legality of his arrest and is represented by the same counsel as

---

[2] In resolving a motion to dismiss, the Court may consider matters "incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record[]" without converting it into a motion for summary judgment. *Felder v. Johanns*, 595 F. Supp. 2d 46, 58-59 (D.D.C. 2009) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993)).

he is in the instant case. *Id.* Discovery has closed in his Superior Court action, and the defendants in that case moved for summary judgment on May 26, 2015. *See* Ex. 3 (Docket in *Bey v. Government of the District of Columbia*, Case No. 2014 CA 003511 (D.C. Sup. Ct.)).

## LEGAL STANDARD

When ruling on Rule 12(b)(6) motions, courts may employ a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although courts must assume the veracity of all "well-pleaded factual allegations" in the Complaint, *id.*, they need not accept as true "naked assertions devoid of further factual enhancement," *id.* at 678 (quoting *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), "a legal conclusion couched as a factual allegation," *id.* at 678, or "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," *Kowal v. MCI Comms. Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678.

Once a court has determined that there are well-pleaded factual allegations, it must then determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Simply alleging facts "consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.*; *see also Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987). "Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading. Unless the complaint states a compensable claim for relief under

the Federal Constitution, it should not survive a motion to dismiss." *Butz v. Economou*, 438 U.S.

478, 507-508 (1978); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

In evaluating a Rule 12(b)(6) motion to dismiss, a court "'may consider only the facts

alleged in the complaint, any documents either attached to or incorporated in the complaint and

matters of which [a court] may take judicial notice.'" *Trudeau v. Fed. Trade Comm'n,* 456 F.3d

178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621,

624-25 (D.C. Cir. 1997)). This Court is empowered to take judicial notice of orders and factual

findings made by other courts, including the D.C. Superior Court. *See Remy Enter. Grp., LLC v.

Davis*, 37 F. Supp. 3d 30, 33 n.4 (D.D.C. 2014).

## ARGUMENT

I. <u>The Court Should Dismiss the Claims of Bugg Bey Under the *Colorado River*
Doctrine Or, In the Alternative, Stay Them.</u>

While Federal Courts have a strong obligation to adjudicate controversies appropriately

before them, *see Reiman v. Smith*, 12 F.3d 222, 223 (D.C. Cir. 1993), the Supreme Court

articulated an exception applicable to cases like this one in *Colorado River Water Conservation

District v. United States*, 424 U.S. 800 (1976). *See id.* at 817-18 ("[C]onsiderations of wise

judicial administration, giving regard to conservation of judicial resources and comprehensive

disposition of litigation" may permit the dismissal or stay of "a federal suit due to the presence of

a concurrent state proceeding."). This narrow exception is directly applicable here, where Mr.

Bugg Bey brings claims that are duplicative of his claims in a lawsuit against the District

currently pending in the Superior Court of the District of Columbia, *Bey v. Government of the

District of Columbia*, Case No. 2014 CA 003511 (D.C. Sup. Ct.). As explained herein, the

abstention doctrine articulated in *Colorado River* is directly applicable and justifies dismissal of his claims.[3]

To determine whether *Colorado River* abstention is appropriate, the Supreme Court outlined several factors to inform a district court's discretionary decision whether to abstain from exercising jurisdiction. Those relevant to the Court's analysis here include (1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, and (3) the order in which the federal and state courts obtained jurisdiction and the progress of the litigation in the concurrent jurisdiction. *Id.* at 818. The Supreme Court has also counseled that courts consider whether (4) the case involves federal or state law and (5) the inadequacy of the concurrent proceedings to protect the litigants' rights.[4] *See Moses H. Cone Memor'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23-26 (1983). Defendants acknowledge, as they must, that the Court's analysis of these factors "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. Nevertheless, consideration of these factors in *this* case militates strongly in favor of abstention.

The first factor—the convenience of the federal forum given its location—should be treated as irrelevant, given that the competing fora are both located in the District of Columbia. For example, in *1443 Chapin Street, LP v. PNC Bank, National Association*, 718 F. Supp. 2d 78

---

[3] Should the Court conclude that abstention is warranted, it may either dismiss or stay the case. *See Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1517 (D.C. Cir. 1989) ("The Supreme Court has clearly held that 'a stay is as much a refusal to exercise federal jurisdiction as a dismissal,' because a decision to defer to proceedings in state court 'necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.' " (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28 (1983)). For the reasons explained herein, Defendants believe dismissal is appropriate.

[4] Another factor exists for cases involving *in rem* jurisdiction. *See Colo. River*, 424 U.S. at 818. As that question is not relevant for this case, the factor has been omitted.

(D.D.C. 2010), the Court determined that location was "of little import … given the relatively close proximity of Baltimore and the District." *Id*. at 83 (citing *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 4 (D.D.C. 2006). Accordingly, this factor neither favors nor disfavors *Colorado River* abstention because the state and federal courts sit in the same city.

The second factor—the desirability of avoiding piecemeal litigation—weighs towards *Colorado River* abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1369 (9th Cir. 1990) (citations omitted). The facts of Mr. Bugg Bey's two cases are identical because they involve the same arrest. Thus, neither "involve[s] distinct issues of law and fact specific to the" federal or state suit. *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1142 (11th Cir. 2013). The proof in both cases will be the same, as both revolve around the exact same set of facts. *Id.* at 1142-43 (finding against abstention in part because "the proofs will differ concerning the nature and circumstances surrounding the transfer of distinct assets at distinct times; and the method of proof surrounding the mens rea of the sixteen named defendants will surely differ as well"). It would not constitute a wise and effective use of judicial resources for this Court to entertain Mr. Bugg Bey's claims while litigation remains ongoing in the Superior Court. Progress in this case will have to be, at best, fitful to ensure that rulings of this Court—both procedural and substantive—are not inconsistent with those of the Superior Court. *See also Naegele v. Albers*, 940 F. Supp. 2d 1, 9 (D.D.C. 2013) (staying the "entirety of the [federal] proceedings pending the outcome of" plaintiff's state litigation); *see also Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349–53 (D.C. Cir. 2003) ("[P]arallel litigation of factually related cases i[n] separate fora is inefficient."). Accordingly, this factor weighs strongly in favor of abstention.

7

The order in which the federal and state courts obtained jurisdiction and the progress of the litigation in the concurrent jurisdiction—the third *Colorado River* factor—also weighs decisively in favor of abstention. Mr. Bugg Bey's Superior Court lawsuit was filed nearly a year ago, on June 6, 2014. Discovery has concluded, and the defendants in that case filed a motion for summary judgment on May 26, 2015. During the course of discovery, hundreds of pages of documents were produced, and three depositions were taken. In stark contrast, this case is in its infancy. Should Mr. Bugg Bey's claims survive this Motion to Dismiss, discovery would likely not *begin* until at least mid-summer 2015. By that time, dispositive motions in the Superior Court action will be fully briefed and ripe for a decision. Accordingly, it would hardly be a wise and efficient use of judicial resources to engage in duplicative discovery and dispositive motions briefing in this Court. The third factor heavily favors *Colorado River* abstention.

Fourth, the Court considers whether the case involves federal or state law. On this factor, Defendants acknowledge that Mr. Bugg Bey has alleged constitutional claims pursuant to 42 U.S.C. § 1983 in this case, which would normally weigh in Plaintiff's favor. Nevertheless, close examination of the basis of the federal claims reveals that they are functionally identical to his common law claims for false arrest and malicious prosecution. *See* Compl., at ¶¶ 140-159. Thus, despite Mr. Bugg Bey's explicit pleading of federal claims, their substance weighs in favor of abstention. *See Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 253 (D.D.C. 2007) (finding *Colorado River* abstention appropriate in part because the claim was appropriately characterized as a state law medical malpractice claim, even though raised under § 1983).

Finally, at the root of this litigation is consideration of a District of Columbia statute, not a federal one. Any construction of the statute should properly take place in the District of Columbia courts. Moreover, challenges to D.C. Code § 22-1307(a) necessarily involve difficult

questions of District law and policy. This is evidenced by the extensive balancing of interests that went into crafting the law in the first place. *See* Ex. 4 (District of Columbia, Comm. on Pub. Safety & the Judiciary, Report on Bill 18-425, 8th Sess. (2010)) at 2 (explaining that the legislation grew from a working group "with representatives from a number of agencies and organizations including MPD, D.C. Attorney General, the Office of Police Complaints, the U.S. Attorney's Office, Pretrial Services Agency, Public Defender Service, and the ACLU"). "Because this matter involves difficult—and perhaps novel—questions of local law and policy, the source-of-law factor favors abstention." *Foster-el v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 73 (D.D.C. 2001); *see also Am. Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir. 1990); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985). Accordingly, despite the federal cause of action under which Plaintiffs bring some of their claims, the fourth factor actually weighs in favor of abstention.

Finally, as to the fifth factor, the Superior Court is unquestionably an adequate proceeding to ensure that Mr. Bugg Bey's rights are protected. *See Foster-el*, 163 F. Supp. 2d at 73 ("The Superior Court is more than capable of handling the [parallel state litigation] and has measures available to ensure that parties are not prejudiced in any way by the jury.") Moreover, it is the forum that he himself selected to challenge the constitutionality of D.C. Code § 22-1307(a), a challenge that he continues to prosecute to this day. This demonstrates that Mr. Bugg Bey's rights will be adequately protected by the Superior Court and that this fifth factor favors *Colorado River* abstention.

Considering the *Colorado River* factors relevant to the instant case, it is clear that this represents one of the rare instances where abstention is appropriate. Four of the five factors clearly weigh in favor of abstention, and the first—the locations of the competing fora—is

neutral. Accordingly, Defendants request the Court dismiss the claims of Mr. Bugg Bey from this case, meaning that he can pursue them only in Superior Court.  In the alternative, Defendants request that the Court stay the claims of Mr. Bugg Bey pending resolution of the Superior Court action.

## II.   Plaintiffs Do Not State Claims for False Arrest Under Either the Fourth Amendment or the Common Law.

Plaintiffs' Counts I and IV assert claims for false arrest under the Fourth Amendment and the common law, respectively.[5] The elements of these claims, however, are the same:  "that the plaintiff was arrested against his will and that the arrest was unlawful." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 (D.C. Cir. 1984). An arrest will be unlawful when there is no probable cause that the arrestee committed a crime. *See id.*; *Westfahl v. District of Columbia*, ___ F. Supp. 3d ___, 1:11-cv-02210 (CRC), 2014 WL 6999078, at *4 (D.D.C. Dec. 12, 2014). "Courts determine whether probable cause existed by analyzing the totality of the circumstances, which requires that 'the police had enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it.'" *Magliore v. Brooks*, 844 F. Supp. 2d 38, 44 (D.D.C. 2012) (quoting *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006)).

Plaintiffs' own allegations demonstrate that probable cause existed for their arrests. The two elements of D.C. Code § 22-1307(a) are (1) that a person "crowd, obstruct, or incommode" one of the designated thoroughfares or locations and (2) that the person "continue or resume" doing so "after being instructed by a law enforcement officer to cease." The Complaint clearly

---

[5] Plaintiffs claim to assert their common law false arrest claim under 42 U.S.C. § 1983. Compl., Count IV. "But § 1983 claims are designed to vindicate federal law, not state law." *Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012). Plaintiffs' claim fails on this ground alone. However, Defendants address the merits of the claim as if it had been properly brought as a cause of action under District of Columbia law.

alleges that, before Mr. Agnew was arrested, he was standing in a group that extended onto the sidewalk and that he twice refused to move after being instructed to do so by a law enforcement officer. Compl., ¶¶ 85-95. Mr. Bugg Bey was also standing in a group that extended onto the sidewalk and would have prevented pedestrians from passing. *Id.*, ¶¶ 105, 112 & 117. Although he obeyed a law enforcement officer's instruction to move, he and others resumed standing at the same location within an hour, at which point he was arrested. *Id.*, ¶ 115, 120 & 121. Both Plaintiffs were standing in groups that partially obstructed the sidewalk and were instructed to cease blocking passage by a law enforcement officer. Mr. Agnew did not comply at all, and Mr. Bugg Bey quickly resumed blocking passage. Thus, the officers who observed this conduct had enough information to believe that Plaintiffs violated D.C. Code § 22-1307(a), and therefore had probable cause to arrest them.

Plaintiffs assert that their arrests were unlawful because D.C. Code § 22-1307(a) is overbroad under the First Amendment and unconstitutionally vague under the Fifth Amendment. Compl., ¶¶ 141 & 153. Although this is not the case for the reasons discussed below, it is critical to note that **these legal assertions are entirely irrelevant to Plaintiffs' false arrest claims.** "A police officer's probable cause determination depends on the elements of the applicable criminal statute." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010). "[A]n arrest made in good-faith reliance on an ordinance is valid regardless of a subsequent judicial determination of its unconstitutionality." *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012). Thus, Plaintiffs' false arrest claims fail, regardless of the dubious merits of their challenges to D.C. Code §22 1307(a)'s constitutionality.

In an abundance of caution, however, Defendants address those arguments on their merits here.

A.  D.C. Code § 22-1307 Is Not Overbroad Under the First Amendment.

Plaintiffs must clear an extraordinarily high hurdle to succeed in their overbreadth challenge to D.C. Code § 22-1307(a).[6] "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the "overbreadth doctrine is 'strong medicine' " that courts should employ "'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). Here, Plaintiffs' facial overbreadth claim falls far short of that hurdle.

Facial overbreadth exists only when a law "prohibits a substantial amount of protected speech" or expressive conduct. *United States v. Williams*, 553 U.S. 285, 292 (2008); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). Whether a law punishes a substantial amount of protected speech or conduct is "judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. Although "[t]he concept of 'substantial overbreadth' is not readily reduced to an exact definition," courts will generally not find a statute facially invalid unless "there [is] a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984).

---

[6] As explained in footnote 1, *supra*, it is clear from the Complaint that Plaintiffs seek to challenge the validity of subsection (a) of D.C. Code § 22-1307, not subsection (b) of that statute. However, to the extent Plaintiffs oppose dismissal by asserting the overbreadth of D.C. Code § 22-1307(b), that claim fails for at least three reasons. First, the Complaint does adequately plead that claim so as to give the District notice of it. *See* Fed. R. Civ. P. 8(a). Second, absent an injury-in-fact—given that neither Plaintiff was arrested under subsection (b)—Plaintiffs would lack standing even under the lessened standing requirements for overbreadth challenges. *See Gilles v. Torgersen*, 71 F.3d 497, 501 (4th Cir. 1995); *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991). Third, D.C. Code § 22-1307(b) makes it a crime to disregard a police instruction to cease demonstrating only when the demonstration occurs "in an area where it is otherwise unlawful." In other words, D.C. Code § 22-1307(b) does not impose any substantive restrictions on the First Amendment right to associate; it merely provides a mechanism for enforcing those restrictions. Thus, any overbreadth would exist in the statutes creating those substantive restrictions, not D.C. Code § 22-1307(b).

This standard will virtually never be met when a statute regulates conduct that is not inherently expressive and does so in a way that is neutral as to the content of any incidental expression. As the Supreme Court explained, "overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner." *Broadrick*, 413 U.S. at 614. Thus, "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression.'" *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996); *see also Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003).

Compared with its legitimate scope, D.C. Code § 22-1307(a) does not reach a substantial amount of constitutionally protected conduct. Initially, the statute is content-neutral. It does not apply differently to those expressing a particular idea—or, indeed, any idea at all—through their conduct. In fact, if people engaged in the type of conduct regulated by the statute to express ideas, their actions would fall under subsection (b), concerning demonstrations, not subsection (a). Thus, far from targeting expressive conduct, D.C. Code § 22-1307(a) specifically exempts it.

Further, there is a broad legitimate scope to the statute. The District "has a strong interest in ensuring the public safety and order, [and] in promoting the free flow of traffic on public streets and sidewalks." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994). It has a similarly strong interest in ensuring that people can enter and exit buildings, use public transit, and enjoy public parks. *See generally Hodge v. Talkin*, 949 F. Supp. 2d 152, 196 (D.D.C. 2013) (noting that § 22-1307 satisfies the District's interest in ensuring entrance and egress from the Supreme Court building). There are innumerable methods and motivations for individuals to act to threaten those interests, the vast majority of which have nothing to do with expression. Indeed,

D.C. Code § 22-1307(a) is not directed at expression or conduct commonly associated with expression. It is not inherently expressive conduct "[t]o crowd, obstruct, or incommode" a thoroughfare or entrance. *See Green v. City of Raleigh*, 523 F.3d 293, 302 (4th Cir. 2008) (holding that blocking entrances of public buildings is not conduct protected by the First Amendment); *Amster v. City of Tempe*, 248 F.3d 1198, 1200-01 (9th Cir. 2001) ("The Provision facially regulates only sitting and lying [on the sidewalk] in certain places at certain times; it does not regulate speech or patently expressive conduct."). It is also not expressive conduct to disregard a law enforcement officer's lawful instructions to cease doing so. *See Colton*, 407 U.S. at 109; *Young*, 655 F.3d at 1170; *O'Nan*, 452 F. App'x at 282; *Startzell*, 533 F.3d 183 at 204.

In sum, measured against the breadth of its legitimate scope, D.C. Code § 22-1307(a) does not criminalize a substantial amount of protected conduct. Therefore, it is facially valid under the First Amendment, and Plaintiffs' claim to the contrary is entirely unavailing.

B. **D.C. Code § 22-1307(a) Is Not Vague Under the Fifth Amendment, Either As-Applied Or on Its Face.**

Unlike First Amendment overbreadth claims, a court "consider[s] whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (quoting *Hoffman Estates*, 455 U.S. at 495). Thus, the initial question that must be addressed is whether D.C. Code § 22-307(a) was unconstitutionally applied to Plaintiffs. If not, then Plaintiffs lack standing to assert a facial challenge to the statute.

1. *As-Applied Challenge*

Plaintiffs do not plead a claim for a violation of the Fifth Amendment based on the manner in which D.C. Code § 22-1307(a) was applied to them. For purposes of this type of

14

claim, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). Here, there is no doubt that the statute was sufficiently clear to put a person of reasonable intelligence on notice that conduct like Plaintiffs' violated D.C. Code § 22-1307(a). *See United States v. Williams*, 553 U.S. 285, 304 (2008) (applying the "person of ordinary intelligence" standard). As discussed above in connection with the probable cause analysis, Plaintiffs' allegations make clear that their conduct at the time of the arrest fell squarely within the prohibitions of D.C. Code § 22-1307(a). *See* § II, *supra*. Both Plaintiffs admit to being in a group that was obstructing a public sidewalk, and each concedes that he refused to comply with the instructions of a law enforcement officer to move. Indeed, both Plaintiffs were specifically told by the law enforcement officers that they were "blocking passage." Compl., ¶¶ 93 & 113. It should therefore have been reasonably clear to Plaintiffs that their conduct provided probable cause to believe that they were violating D.C. Code § 22-1307(a). As a result, their Fifth Amendment as-applied claims fail.

> 2. *Facial Challenge*

Initially, as noted above, Plaintiffs lack standing to assert a facial challenge to D.C. Code § 22-1307(a) because the law was not unconstitutionally vague as it applied to their actions. *See* § II.B, *supra*; *Holder*, 561 U.S. at 18-19. However, Defendants will nonetheless explain why Plaintiffs' facial challenge fails on its merits as well.

To succeed in their facial challenge to D.C. Code § 22-1307(a) under the Fifth Amendment Due Process Clause, Plaintiffs must show that it the statute "is impermissibly vague in all of its applications. *Village of Hoffman Estates*, 455 U.S. at 495. The Supreme Court explained that the term "vague" in this sense does not mean "that it requires a person to conform

his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Id.* at n.7; *see also United States v. Kim*, 808 F. Supp. 2d 44, 53 (D.D.C. 2011). In other words, a statute will be impermissible vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *William*s, 553 U.S. at 304.

Plaintiffs appear to assert three bases for the purported vagueness of D.C. Code § 22-1307(a):  (1) that there is no *scienter* requirement, Compl., ¶ 30; (2) that the statute does not limit its application to only groups of three or more, *id.*; and (3) that "the terms 'crowd,' 'obstruct,' and 'incommode' are undefined in the . . . statute" and "[w]ithout definition, these terms are so vague as to fail to provide the notice due process demands," *id.*, ¶¶ 31-32. None of these three bases, however, establishes that the statute is vague.

Regarding Plaintiffs' first contention that the statute is unconstitutionally vague because it does not require *scienter*, this fails both as a matter of fact and law. Initially, to be convicted under D.C. Code § 22-1307(a), a person must have disregarded a law enforcement officer's instruction to move. In other words, contrary to Plaintiffs' argument, the second element of the statute does contain an implicit *scienter* requirement. Were there any vagueness to the statute, this alone would remedy it. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000). However, the "lack of a *scienter* element does not render [a statute] unconstitutionally vague." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013); *see also United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 98 n.16 (D.D.C. 2008). If that were the case, then every statute would have to contain a *scienter* requirement to pass constitutional muster. Thus, even absent its *scienter* requirement, D.C. Code § 22-1307(a) would not be unconstitutionally vague unless its language did not put

people of ordinary intelligence on notice. As explained below, the statute is sufficiently clear, so *scienter* would not be required for the statute to be constitutional. Nonetheless, the second element of the statute serves as an implicit *scienter* requirement, necessitating dismissal of Plaintiffs' claim.

As to Plaintiffs' second contention, that the statute must apply only to groups of three or more, this position is completely meritless. The plain language of D.C. Code § 22-1307(a) states that it applies to any "person, alone or in concert with others." There is no vagueness there. The requirement that three or more people be present to engage in unlawful assembly was a judicial interpretation of statutory language in a predecessor statute that does not exist in D.C. Code § 22-1307(a). *See Kinoy v. District of Columbia*, 400 F.2d 761, 761 (D.C. 1968). It had nothing to do with avoiding unconstitutional vagueness. *See generally id.* Plaintiffs' argument on this point clearly fails.

Ultimately, the gravamen of Plaintiffs' vagueness challenge appears to be their third contention regarding the lack of explicit statutory definitions of "crowd," "obstruct," and "incommode." However, "'[a] failure by a statute to define all its terms does not necessarily render it impermissibly vague.'" *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 n.4 (4th Cir. 2013) (quoting *Centro Tepeyac v. Montgomery Cnty.*, 779 F. Supp. 2d 456, 471 (D. Md. 2011) (alteration in original)); *see Wag More Dogs, LLC v. Artman*, 795 F. Supp. 2d 377, 388 (E.D. Va. 2011)). Rather, courts "give [terms] their 'ordinary or natural meaning,'" which can be determined "by looking to 'general usage dictionaries.'" *Castro v. Terhune*, 712 F.3d 1304, 1312 (9th Cir. 2013) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994) and *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011), respectively). Indeed, the committee of the D.C. Council that drafted the current version of D.C. Code § 22-1307 specifically "referred to

17

Webster's New Universal Unabridged Dictionary, Second Edition (1983) in understanding various words used in th[e] bill."[7] Ex. 4 at 6 n.5.

The plain meanings of the terms "crowd," "obstruct," and "incommode" are not unconstitutionally vague.[8] In addition to the fact the statute requires a person to have disregarded a law enforcement officer's instruction to move, the words themselves are sufficient to put someone on notice that their conduct violates the law. The dictionary definitions of the relevant senses of those terms are, respectively: "to gather in large numbers; throng; swarm"; "to block or close up with an obstacle; make difficult to pass"; and "to impede; hinder." Dictionary.com, www.dictionary.reference.com/ (last visited May 25, 2015). If someone is situated such that it would be difficult for another person to pass (and then disregards a law enforcement officer's instruction to move), then he or she should reasonably know that he or she is in violation of D.C. Code § 22-1307(a). This conclusion is entirely in line with the multitude of courts that have held that similar terms are not unconstitutionally vague, even without the notice provided by law enforcement officers' instructions. *See, e.g.*, *Cameron v. Johnson*, 390 U.S. 611, 616 (1968) (rejecting a vagueness challenge to the phrase "obstruct or unreasonably interfere" was not unconstitutionally vague); *Betancourt v. Bloomberg*, 448 F.3d 547, 553 (2d Cir. 2006) (same for "obstruction"); *Hoffman v. Hunt*, 126 F.3d 575, 581 (4th Cir. 1997) (same for "obstruct" and "block"); *Pro-Choice Network v. Schenk*, 67 F.3d 359, 373 (2d Cir. 1994) (same for "crowding").

---

[7] The committee also "preserv[ed] the phrasing" "crowd, obstruct, or incommode" specifically to preserve[] much of the case law" explaining what constitutes a violation of the statute. Ex. ___ at 6-7.

[8] The term "incommode" is admittedly less commonly used in everyday speech than "crowd" or "obstruct," but that does not render it vague. Further, "[a]ny vagueness concerns are further alleviated by the list of easily understood terms surrounding" it. *United States v. Conlan*, ___ F.3d ___, No. 13-50842, 2015 WL 2330296, at *2 (5th Cir. May 14, 2015).

\*   \*   \*

D.C. Code § 22-1307(a) is not vague under the Fifth Amendment, either as-applied or on its face. The allegations of the Complaint clearly demonstrate that probable cause existed to arrest both men for violation of D.C. Code § 22-1307(a), defeating the as-applied challenge, which in turn deprives Plaintiffs of standing to maintain a facial challenge. Further, the facial challenge also fails because Plaintiffs cannot show that the statute is impermissibly vague in all its applications. Accordingly, Counts I and IV of the Complaint should be dismissed.

## III.   Plaintiffs Do Not State a Claim for False Arrest Under the First Amendment.

In Count II, Plaintiffs assert a claim for false arrest based on the First Amendment, claiming that their arrests violated their rights to speak and associate. However, there is no claim for false arrest under the First Amendment. The right to be free from arrest derives from the Fourth Amendment. *See generally Herring v. United States*, 555 U.S. 135, 136 (2009). It appears that Plaintiffs intended this claim to assert that their arrests violated the Fourth Amendment because D.C. Code § 22-1307(a) was overbroad as it applied to them. Even charitably construing their claim this way, however, Plaintiffs' claim fails because they were not arrested for engaging in protected conduct.

Plaintiffs identify only two types of conduct purportedly protected by the First Amendment for which they were punished under D.C. Code § 22-1307(a). Compl., ¶¶ 98 & 125. Neither is actually protected. First, Plaintiffs assert that socializing on or near the sidewalk is protected by the First Amendment. *Id.* However, the Supreme Court has explicitly held that the First Amendment right to associate does not include "a generalized right of 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Rather, the right to associate extends only to

19

gathering to engage in expressive activities otherwise protected by the First Amendment.[9] *Id.* at 24. Plaintiffs do not allege that they were seeking to convey a message by their conduct. Again, if they were, they would likely be subject to subsection (b) of D.C. Code § 22-1307, not subsection (a).

Second, Plaintiffs assert that arguing or questioning the lawful instructions of law enforcement officers is protected by the First Amendment.[10] Compl., ¶¶ 98 & 125. However, D.C. Code § 22-1307(a) does not criminalize that conduct. If Plaintiffs had complied with the police officers' instructions, they were free to express their disagreement with those instructions. Conversely, Plaintiffs were not entitled to engage in some other act, constitutionally protected or otherwise, instead of complying with the instructions. As the Third Circuit explained, "although speech may be protected, [a person's] choice to disobey police orders is not." *Startzell v. City of Phila., Pa.*, 533 F.3d 183, 204 (3d Cir. 2008); *see also Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) (stating that the failure to comply with a police order is "not an act of expression protected by the First Amendment"); *United States v. O'Nan*, 452 F. App'x 280, 282 (4th Cir. 2011) (rejecting a First Amendment overbreadth claim because the criminal defendant was "prosecuted not for exercising her free speech rights, but for interfering with the use of a Forest Service Road").

---

[9] The right to associate also includes the right to be free from government interference in "certain intimate human relationships." *City of Dallas*, 490 U.S. at 24 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984)). This aspect of the right to associate is not implicated by D.C. Code § 22-1307.

[10] The Complaint does not include any specific factual allegations that Mr. Bugg Bey questioned the law enforcement officer who arrested him, so he presumably does not assert this portion of the claim. *See* Compl., ¶¶ 105-121 (describing Mr. Bugg Bey's arrest); *but see id.*, ¶ 125 ("Mr. Bugg Bey was simply standing outside exercising his First Amendment rights to free speech and to associate with his friends and neighbors, and exercising his First Amendment rights to ask the officers why what he was doing was wrong."). Nonetheless, Defendants address his possible claim in an abundance of caution.

Indeed, the Supreme Court has specifically rejected the proposition that conduct like Plaintiffs' is protected under the First Amendment. In *Colton v. Kentucky*, 407 U.S. 104 (1972), the Court affirmed the disorderly conduct conviction of a man who repeatedly refused to comply with a law enforcement officer's instructions to move away from the officer, who was ticketing another individual. *Id.* at 106. The Court held that the appellant could "be required to move on" because "[h]e had no constitutional right to . . . engage the . . . officer in conversation at that time" and that his "conduct in refusing to move on after being directed to do so was not, without more, protected by the First Amendment." *Id.* at 109; *see also Wash. Mobilization Comm. v. Cullinane*, 566 F.2d 107, 120 (D.C. Cir. 1977) (holding that, if a person "refuses to obey . . . [a lawful] order after fair notice and an opportunity to comply, his arrest does not violation the Constitution even though he" had not previously violated the law).

In sum, no cause of action exists for false arrest based on the First Amendment. Nevertheless, generously construing Plaintiffs' Complaint to assert a claim for false arrest under the Fourth Amendment, the claim still fails. As the allegations of the Complaint establish, probable cause existed for Plaintiffs' arrests for reasons that in no way implicate the First Amendment. Count II should be dismissed.

## IV.   **Plaintiffs Do Not State Claims for Unlawful Prosecution Under Either the Fourth Amendment or the Common Law.**

In Counts III and V, Mr. Agnew[11] asserts claims for unlawful prosecution under the Fourth Amendment and the common law, respectively.[12] In the District of Columbia, the

---

[11] Mr. Bugg Bey does not assert an unlawful prosecution claim. *See* Compl., ¶ 151 (stating only that "Mr. Agnew and other members of the Prosecution class are entitled to damages and other relief" for Count III) & ¶ 159 (stating only that "Mr. Agnew and the other members of the Prosecution Class are entitled to damages and other relief" for Count V). To the extent Mr. Bugg Bey does attempt to assert this claim, it would fail because every element of a malicious prosecution claim is premised on the existence of a criminal proceeding against the plaintiff.

elements of a claim for malicious prosecution are:   (1) a criminal proceeding instituted or continued by the defendant against the plaintiff, (2) termination of the proceeding in favor of the accused, (3) absence of probable cause for the proceeding, and (4) malice or a primary purpose in instituting the proceeding other than that of bringing an offender to justice. *DeWitt v. District of Columbia*, 43 A.3d 291, 296 (D.C. 2012); *Cousins v. Hathaway*, No. 12-CV-1058 (RLW), 2014 WL 4050170, at *8 (D.D.C. Aug. 15, 2014); *Amobi v. District of Columbia Dep't of Corr.*, 2014 WL 2895933, at *7 (D.C. Cir. June 27, 2014). The elements are the same whether the claim is asserted under District of Columbia law or the Fourth Amendment. *See Creecy v. District of Columbia*, 10-841 (CKK), 2011 WL 1195780, at *7 (D.D.C. Mar. 31, 2011) (applying the elements of a District of Columbia malicious prosecution claim to a Fourth Amendment malicious prosecution claim). Because the Complaint does not contain allegations sufficient to satisfy elements two through four of the claim, Counts III and V should be dismissed.

First, the Complaint lacks allegations establishing that Mr. Agnew's underlying criminal proceeding terminated in his favor. Favorable termination for the accused does not necessarily require the accused to be found innocent after trial, but the termination must reflect on the merits of the underlying action. *Kenley v. District of Columbia* No. CV 14-1232 (JEB), 2015 WL 1138274, at *13 (D.D.C. Mar. 13, 2015). "Merely alleging that criminal charges were dismissed is . . . insufficient to plead that the underlying case was favorably terminated." *Kenley*, 2015 WL 1138274, at *13. Mr. Agnew's case was dismissed for want of prosecution. Compl., ¶ 104. It was

---

[12] Plaintiffs claim to assert their common malicious prosecution claim under 42 U.S.C. § 1983. Compl., Count V. "But § 1983 claims are designed to vindicate federal law, not state law." *Embody*, 695 F.3d at 581. Plaintiffs' claim fails on this ground alone.  Even so, Defendants address the merits of the claim as if it had been properly brought as a cause of action under District of Columbia law.

not dismissed on the merits. As a result, Mr. Agnew cannot demonstrate the first element of his malicious prosecution claim.

Second, as previously discussed, there was probable for Mr. Agnew's arrest. *See* § II, *supra*. While probable cause to prosecute is separate from probable cause to arrest, *Cousins*, 2014 WL 4050170, at *8, nothing in the Complaint indicates that any new evidence undermined the probable cause in Mr. Agnew's case before it was charged. Compl., ¶¶ 102-104. To the contrary, the allegations in the Complaint establish that Mr. Agnew was charged by sworn information attested to by his arresting officer, presumably based on the same events that formed probable cause for Mr. Agnew's arrest. *Id.*, ¶ 102. Plaintiffs do allege that in their malicious prosecution claims that D.C. Code § 22-1307(a) is unconstitutionally vague under the Fifth Amendment. Compl., ¶¶ 149 & 157. However, just as in the case of false arrest, a court later finding that a statute is unconstitutional does not support a malicious prosecution claim. *See Ickes v. Flanagon*, 3:2007-143, 2008 WL 859183, at *5 (W.D. Pa. Mar. 31, 2008); *cf. Thayer*, 705 F.3d at 247. "[S]tate actors can not reasonably be expected to predict change in the law," so subsequent invalidation of a statute does not vitiate probable cause as long as there was a "statute that was valid and enforceable" "at the time that Plaintiff's case was commenced." *Ickes*, 2008 WL 859183, at *5. Moreover, as set forth above, there is no basis to invalidate D.C. Code § 22-1307(a) under the Fifth Amendment. *See* § II.b, *supra*. In sum, Mr. Agnew cannot demonstrate the second element of the malicious prosecution claim either.

Finally, Plaintiffs cannot establish that Mr. Agnew was charged out of malice or for any reason other than for violating D.C. Code § 22-1307(a). Although the presence of malice is an issue for the fact finder, *Tyler v. Cent. Charge Serv., Inc.*, 444 A.2d 965, 969 (D.C. 1982), here there are not even allegations that the charges were filed by the prosecutors out of malice or

other improper motive. Again, to the contrary, the Complaint establishes that the charges were based on sworn information provided to the prosecutor by the arresting officer. Compl., ¶ 102. Accordingly, the third element likewise cannot be established by the allegations of Plaintiffs' Complaint.

Because Mr. Agnew has failed to allege three of the four elements necessary to prove a claim for malicious prosecution, Counts III and V should be dismissed.

## V.    The Court Should Dismiss Chief Lanier as a Defendant in Both Her Official and Personal Capacities.

Plaintiffs have sued Chief of Police Cathy Lanier in both her personal and official capacities. Compl., ¶ 18. However, her official capacity designation is duplicative of the claims of the District of Columbia, and she is protected by qualified immunity in her individual capacity. As a result, for the reasons explained herein, all claims against her should be dismissed.

### A.    The Claims Against Chief Lanier in Her Official Capacity Are Redundant and Should be Dismissed.

Plaintiffs have named both Chief Lanier in her official capacity and the District of Columbia as parties in this lawsuit. However, "[c]laims brought against government employees in their official capacity are treated as claims against the employing government and serve no independent purpose when the government is also sued." *Hardy v. District of Columbia*, 601 F. Supp. 2d 128, 186-187 (D.D.C. 2009). "Because official capacity suits are redundant when a municipality is also a named defendant, it is unnecessary and inefficient for [the official] to remain a defendant." *Brown v. Corrs. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009). Therefore, "'the overwhelming approach that has been taken by members of this Court, as well as the position taken by other courts'" is to dismiss the official capacity claims. *Id.* (quoting

24

*Price v. District of Columbia*, 545 F. Supp. 2d 89, 94 (D.D.C. 2008). The Court should follow

that approach here and dismiss the claims against Chief Lanier in her official capacity.

    B.  <u>The Claims Against Chief Lanier in Her Personal Capacity Should be Dismissed Under</u>
<u>the Doctrine of Qualified Immunity.</u>

Chief Lanier, as a government official being sued for money damages, is entitled to

qualified immunity so long as her "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Int'l Action Ctr. v.*

*United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). Qualified immunity applies when officials are required to exercise judgment on an

open question of law, regardless of whether they reach the right outcome. *Mitchell v. Forsyth*,

472 U.S. 511, 535 (1985). Qualified immunity "protects all but the plainly incompetent or those

who knowingly violate the law." *Int'l Action Ctr.*, 365 F.3d at 24.

A government official is entitled to dismissal based on qualified immunity if either

(1) the complaint fails to state a claim or (2) the right allegedly violated by the official was not

clearly established when the alleged violation occurred. *See Brosseau v. Haugen*, 543 U.S. 194

(2004); *Johnson v. District of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008). Moreover, once the

defense of qualified immunity is raised, the burden is on the plaintiff to overcome the defense

and show that the purported right was clearly established. *Hunter v. District of Columbia*, 943

F.2d 69, 75 (D.C. Cir. 1991).

Here, Plaintiffs cannot meet their burden as to either prong of the test. The Complaint

fails to state claims against Chief Lanier for the reasons discussed in the preceding sections.

Further, at the times Plaintiffs were arrested, their purported right to violate D.C. Code § 22-

1307(a) with impunity was not clearly established. In determining whether a right was clearly

established, it is "vital to note" that this inquiry "must be undertaken in light of the specific

context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Brosseau*, 543 U.S. at 199 (quoting *Saucier*, 533 U.S. at 201). Put another way, officials are immune from suit unless the unlawfulness of their actions was "apparent" under pre-existing law. *Butera v. District of Columbia*, 235 F.3d 637, 652 n.17 (D.C. Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The premise underlying all of Plaintiffs' claims is that D.C. Code § 22-1307(a) is unenforceable, either in its entirety or based on Plaintiffs' conduct.[13] For this premise to be well established, Chief Lanier would have to been put on notice based on one of three sources of law. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007). These sources are: "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Id.* "The more general the statement of law is that [purportedly] puts the official on notice, the more egregious the violation must be before [a court] will find that the official is not entitled to qualified immunity." *Id.*

---

[13] *See* Compl., ¶ 141 (setting forth Count I and alleging that Defendants "violated [Plaintiffs'] Fourth Amendment rights . . . by arresting them for incommoding because the statute is vague under the Fifth Amendment and overbroad under the First Amendment), ¶¶ 144-146 (setting forth Count II and alleging that Defendants "violated [Plaintiffs'] First Amendment rights by arresting or causing them to be arrest under the incommoding statute" for "associate[ing] with people on the sidewalks and public areas of the District" and for "discuss[ing] the scope of the incommoding statute and its application to them with the police that arrested them"), ¶¶ 149-150 (setting forth Count III and alleging that "[t]he incommoding statute is vague in violation of the Fifth Amendment but still the District" with Chief Lanier's assistance and participation "prosecuted Mr. Agnew . . . for violations of the incommoding statute); ¶ 153 (setting forth Count IV and alleging that "[p]olice officers of the District of Columbia violated [Plaintiffs'] common law rights . . . by arresting them for incommoding because the statute is vague under the Fifth Amendment and overbroad under the First Amendment.") & ¶ 157 (setting forth Count V and alleging that "[t]he incommoding statute is vague in violation of the Fifth Amendment but still the District prosecuted Mr. Agnew . . . for violations of the incommoding statute.").

However, there is no source of law that would put Chief Lanier on notice that D.C. Code § 22-1307(a) is unenforceable. The statute has never been invalidated based on First Amendment overbreadth or Fifth Amendment vagueness. No court with jurisdiction over the District of Columbia has found a First Amendment violation based on arrests or prosecutions under the statute based on conduct similar to Plaintiffs' or announced a specific principle of law so clearly applicable to the statute that a reasonable official would have known that enforcing it was unconstitutional. In short, Plaintiffs have asserted a legal challenge of first impression, so they cannot claim that Chief Lanier should have reasonably known that the enforcement of D.C. Code § 22-1307(a) violated the Constitution. Therefore, she is entitled to qualified immunity on the claims against her.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed or, in the alternative, Mr. Bugg Bey's claims should be stayed and Mr. Agnew's claims should be dismissed.


DATE:  May 29, 2015                 Respectfully submitted,

                                    KARL A. RACINE
                                    Attorney General for the District of Columbia

                                    ELIZABETH SARAH GERE
                                    Acting Deputy Attorney General
                                    Public Interest Division

                                    /s/ Toni M. Jackson
                                    TONI M. JACKSON [D.C. Bar No. 453765]
                                    Chief, Equity Section
                                    441 4th Street, N.W.
                                    6th Floor South
                                    Washington, DC 20001
                                    Telephone:  (202) 442-9784
                                    E-mail:  toni.jackson@dc.gov

/s/ Chad Copeland
CHAD COPELAND [D.C. Bar No. 982119]
Assistant Attorney General
441 Fourth Street, N.W.
6th Floor South
Washington, DC 20001
Telephone:  (202) 724-6623
Facsimile:  (202) 741-8880
Email:  chad.copeland@dc.gov

/s/ Gary Feldon
GARY FELDON [D.C. Bar No. 987142]
Assistant Attorney General
441 Fourth Street N.W.
6th Floor South
Washington, DC 20001
Telephone:  (202) 724-5691
Facsimile:  (202) 730-0640
Email:  gary.feldon@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

DARYL AGNEW, *et al.*,                              )
                                                                    )
      Plaintiffs,                              )
                                                                    )          Civil Action No. 15-00340 (ABJ)
      v.                                              )
                                                                    )
DISTRICT OF COLUMBIA, *et al.*,             )
                                                                    )
      Defendants.                            )
_____)

[Proposed] **<u>ORDER</u>**

      Upon consideration of Defendants' Motion to Dismiss Or, in the Alternative, Stay and Dismiss, it is this ____ day of _____, 2015, hereby ORDERED that the claims in Plaintiffs' Complaint are DISMISSED WITH PREJUDICE.

                                _____
                                **AMY BERMAN JACKSON
                                JUDGE, UNITED STATES DISTRICT COURT
                                FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DARYL AGNEW, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 15-00340 (ABJ) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

[Alternative Proposed] **ORDER**

Upon consideration of Defendants' Motion to Dismiss Or, in the Alternative, Stay and Dismiss, it is this _____ day of _____, 2015, hereby ORDERED that Plaintiff Agnew's claims in Plaintiffs' Complaint are DISMISSED WITH PREJUDICE and that Plaintiff Bugg Bey's claims in Plaintiffs' Complaint are STAYED pending a final judgment in *Bey v. Government of the District of Columbia*, Civil Action No. 14-0003511 (D.C. Sup. Ct.).


_____
**AMY BERMAN JACKSON
JUDGE, UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**