# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DARYL THOMAS AGNEW**<br>4223 Brooks Street, NE,<br>Washington DC 20019<br><br>and<br><br>**ALEX DENNIS**<br>3130 Buena Vista Terrace, SE<br>Apt. 1<br>Washington, DC 20020<br><br>and<br><br>**RAYNEKA WILLIAMSON**<br>425 2d Street, NE<br>Washington, DC<br><br>Plaintiffs<br><br>   v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA**<br><br>Defendant | **Civil Action No.: 15-340 (ABJ)** |

## CLASS ACTION

### Third Amended Complaint

1.      Daryl Agnew, Alex Dennis, and Rayneka Williamson on behalf of themselves and the

Arrest Class and the Prosecution Class (both defined below) bring this action against the

Government of the District of Columbia (the "District") for injuries they suffered during the Class

Period through the "MPD" (the District of Columbia Metropolitan Police Department) and the

District of Columbia Office of the Attorney General ("OAG") because the MPD and other law

enforcement officers arrested them and the other members of the Arrest Class and the OAG (and the US Attorney acting with the consent of the OAG pursuant to D.C. Code § 23-101(d) and (e)) prosecuted Mr. Agnew, Mr. Dennis, and Ms. Williamson and the other members of the Prosecution Class under the District's facially unconstitutional "incommoding" statute, D.C. Code § 22-1307 (revised[1] in 2011).

2.      The District's "incommoding" statute is facially unconstitutional under the second prong of the vagueness doctrine, the arbitrary and discriminatory enforcement prong.

3.      The incommoding statute functions as a loitering statute.

4.      It authorizes any law enforcement officer in the District to order any person standing with at least one foot on a sidewalk or a building entrance, whether partially or totally blocking it, regardless of whether anyone else is present to be crowded, obstructed, or incommoded, to leave the area for as long as the officer, in their discretion, commands it.

5.      The vagueness of the operative language, the broad scope of innocent conduct it reaches, the lack of any minimal guidelines, and the lack of an appropriate *mens rea* requirement, provides absolute discretion to police officers to determine what conduct constitutes "crowding, obstructing, or incommoding" and to order people engaging in such conduct (in the officer's uncabinned discretion) to disperse.

6.      The text of the statute does not provide guidelines which cabin the officer's discretion to order dispersal.

---

[1] The provision was enacted in its current form in 2011. D.C. Act 18-693, § 302 (a), 58 D.C. Reg. 640, 644 (2011) (emergency legislation); D.C. Act 19-45, § 302 (a), 58 D.C. Reg. 3701, 3705 (2011) (second emergency legislation); D.C. Act 18-699, § 2 (a), 58 D.C. Reg. 731 (2011) (permanent legislation).

7.     The addition of a dispersal order element, without any guidelines to cabin the officer's discretion in ordering dispersal, magnifies the vagueness of the statute.

8.     The arrests injured Mr. Agnew, Mr. Dennis, and Ms. Williamson and the other members of the Arrest Class by depriving them of their liberty and causing them other damages.  The arrests also left them with arrest records.

9.     The prosecutions injured Mr. Agnew, Mr. Dennis, and Ms. Williamson and the other members of the Prosecution Class because the OAG initiated a prosecution against Mr. Agnew, Mr. Dennis, and Ms. Williamson and the other members of the Prosecution Class and they had to defend themselves and they suffered limits on their freedom pending disposition of their cases and they suffered other injuries.

10.     Prosecutors drop most of the cases that do reach the D.C. Office of the Attorney General from MPD.

11.     For example, in 2014 MPD and other law enforcement officers referred OAG 45 incommoding cases, and OAG initiated prosecution in only 15 of them.

## Jurisdiction and Venue

12.     This Court has original jurisdiction over plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

13.     Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district and all events described herein occurred in the District of Columbia.

## Parties

**14.**     Mr. Agnew, Mr. Dennis, and Ms. Williamson are adults.

**15.**     Mr. Agnew and Mr. Dennis are young black men.

**16.**     Ms. Williamson is an African American woman.

**17.**     The District is a municipal corporation capable of being sued under D.C. Code § 1-102.

**18.**     During all events described herein, all police officers referred to herein, named or unnamed, unless otherwise specified, were police officers of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

## Sidewalk Use

**19.**     People use sidewalks as a gathering place where they can socialize, shop, and enjoy the theatre of life, and not just as paths like the people-movers that connect terminals in airports. As Aristotle says, "People are by nature urban creatures." Politics Book I (1253a1-18).



20.     Figure 1, people lined up along 33d Street, NW in Georgetown waiting to buy cupcakes at Georgetown Cupcake.

21.     They stop, shake hands, and chat, and, invariably, as part of human nature when they stop and chat they stop in the middle of the sidewalk.

22.     Elderly people use walkers on the sidewalk.



23.

24.     Figure 2, elderly resident uses walker on sidewalk in Southeast.

25.     They push large baby carriages up narrow, tree-lined, leaf covered sidewalks and they stop and visit with neighbors standing there or passing by. They queue up on the sidewalk to catch the Metrobus and get into the theatre. They sit on the steps of the Smithsonian to enjoy the weather. They sit outside at outdoor cafes. They stand in groups on the sidewalk after services and talk after leaving their churches, temples, and mosques. They completely clog the sidewalks after sporting events and concerts at venues like the Verizon Center.



26.

27.     Figure 3, young mom pushing a large baby buggy on a narrow sidewalk unwittingly

"crowds, obstructs, and incommodes" a sidewalk in the District of Columbia.



Top: Current engineering sketches for the Starburst intersection. Bottom: Plaza concept sketch
from the H Street-Benning Road Great Streets project. Click to enlarge.

28.

29.     Figure 4, young black man arrested here at Starburst Intersection Plaza 1550 Maryland Ave

NE, Washington, DC 20002 during regular park hours for "crowding, obstructing, or

incommoding " while chatting with friends and sitting on low wall on edge of walkway like the

figure in yellow shirt and blue pants.

30.     They hang out on the streets and corners, especially in the poorer neighborhoods, where

there are no theatres, museums, or outdoor cafes, and the government has not sponsored

redevelopment zones.

31.     Sometimes they even sit on the sidewalk to express their discontent with their government.

32.     In other words, life happens on the sidewalks of the District of Columbia all the time.

33.     The incommoding statute authorizes arrest in each one of these situations - in the police

officer's discretion.

**The D.C. Council enacted an unconstitutional incommoding statute despite being advised not to**

34.     The incommoding statute has been on the books since 1892 and has been the subject of criticism ever since.

35.     The D.C. Council made revisions to the incommoding statute in 2010 which became effective in 2011.

36.     The D.C. Council made five major changes to the statute which rendered it unconstitutionally vague under the second prong of the vagueness doctrine: (1) the Council eliminated any *scienter* element by consciously deciding not to include the "breach of peace" *scienter* element which the Court of Appeals had added by gloss to the previous version of the statute to make the statute Constitutional or any other *scienter* element; (2) the Council eliminated the "assembly" element of the statute by reducing the number of people required for a violation from three to one, thereby eliminating any common law *mens rea* requirement imported into the statute from the common law offense of unlawful assembly; (3) the Council retained the terms "crowd," "obstruct," and "incommode" without providing any definitions or limiting criteria in the incommoding statute; (4) the Council refused to replace these vague and archaic terms with a clearly understood term such as "block passage;" and (5) the Council substituted a "dispersal order" or "move on order" for the *mens rea* requirement (while rejecting any narrowing qualifications such as duration qualifications on the dispersal order).

37.     Various stakeholders in the District's criminal justice system and concerned citizens groups advised the District against these changes.

38.     The MPD and OAG and the United States Attorney's Office all proposed language for "blocking" sidewalks which included both a *mens rea* requirement as well as a "stop blocking" order.

39.     The ACLU also warned the Council that the proposed language for "blocking" sidewalks should include a *mens rea* requirement as well as a stop blocking order.

**District on notice that statute is vague and that it encourages arbitrary and discriminatory enforcement**

40.     Shortly after the amendments became effective the D.C. Council learned that the incommoding statute was being enforced in an arbitrary and discriminatory enforcement.

41.     The D.C. Council even held hearings to investigate the problem.

42.     Moreover, in a letter to then-Attorney General Irv Nathan, Council Member Mary Cheh complained that police were enforcing the incommoding statute in an arbitrary and discriminatory manner.

43.     Council Member Mary Cheh recognized that the dispersal / move-on element meant giving police the ability to banish anyone from a public space whenever they wanted.

44.     But, the D.C. Council did not take any steps to amend the statute to fix the problem of arbitrary and discriminatory enforcement caused by the vagueness described herein.

**The text of the incommoding statute as amended in 2011**

45.     In pertinent part, the "incommoding" statute as amended in 2011 reads:

It is unlawful, alone or in concert with others, to [A] crowd, obstruct, or incommode [1] the use of any street, avenue, alley, road, highway, or sidewalk, or

[2] the entrance of any public or private building or enclosure or [3] the use of or passage through any public conveyance, and [B] to continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding.

D.C. Code[2] § 22-1307(a) (D.C. 2014).

46.     Without further definition, these terms are so vague as to vest unfettered discretion to law enforcement to determine precisely how much crowding, obstructing, or incommoding triggers the statute.

47.     The undefined terms are also so broad as to criminalize a substantial amount of innocent conduct by nearly all of the District of Columbia's population.

48.     The vagueness of the incommoding statute due to the lack of definitions and the imprecision of the terms used is compounded by the lack of an appropriate *mens rea* element.

49.     The addition of a dispersal order element, without any guidelines to cabin the officer's discretion in ordering dispersal, magnifies the vagueness.

50.     The vagueness and overbreadth of the incommoding statute has led the MPD and other law enforcement officers enforcing it to enforce it as a general loitering statute.

**The incommoding statute is employed especially against young black men in neighborhoods such as the Trinidad area**

---

[2] The penalty is a fine of $500 or 90 days in jail. The Office of the Attorney General of the District of Columbia ("OAG") is the proper authority to prosecute alleged violations of the incommoding statute. D.C. Code § 23-101(b). However, the US Attorney may also prosecute cases under the incommoding statute if the Attorney General of the District of Columbia consents. D.C. Code § 23-101(d) and (e).

**51.**     The incommoding statute is employed especially against young black men in the community most frequently in and near areas such as the Trinidad area. "Where the Sidewalk Ends," Will Sommer, City Paper, May 21, 2015.

http://www.washingtoncitypaper.com/articles/47171/where-the-sidewalk-ends-dcs-law-against-blocking-the-sidewalk

**52.**     An informal survey of CJA lawyers and civil rights lawyers who practice in the District indicates that, with the exception of persons arrested for protests, almost every person arrested for incommoding is a young black man or woman in or near an area such as the Trinidad or Bladensburg Road, NE area.

**53.**     These areas are in the process of gentrification and both the area and the streets there are being cleared of the traditionally African American residents.

### Arrest of Young Black Man in Starburst Intersection Plaza

**54.**     The Starburst Intersection Plaza is a broad plaza with broad walkways and the District installed benches and chess tables and chairs and other furniture which invite people to sit and spend time in the park.

**55.**     On about 9/4/2014 several young black men were in the Starburst Intersection Plaza at 1550 Maryland Ave NE, Washington, DC 20002 during normal park hours using it, as the District intended, by sitting down and chatting.

**56.**     The young men were sitting at the edge of a broad walkway. They were not blocking the passage of anyone.

57.     Several carloads of MPD officers stormed into the park like an occupying army and
ordered everyone to leave even though by law the park was open.

58.     One young man did not leave.

59.     The MPD arrested him for incommoding.

60.     The OAG prosecuted him for incommoding in a bench trial in Superior Court but he was
acquitted by the Court on a defense motion for judgment of acquittal.

### Details of Named Plaintiffs' Arrests and Releases, and Prosecutions

### Mr. Agnew's Arrest on Christmas Eve

61.     Mr. Agnew's contact with MPD began about 6:00 pm on Christmas Eve when he and the
mother of his child and a friend were enjoying the evening air on the stoop of his child's mother's
building at 3146 Buena Vista Terrace, SE in Washington, DC.

62.     Mr. Agnew was outside relaxing.

63.     The police report in Mr. Agnew's case which Officer Norris' partner authored has the
same operative language as the Gerstein in Mr. Dennis's case which Officer Norris authored,
namely, "Both of the males were standing in a manner that would cause a citizen or citizens trying
to utilize the walkway to deviate from their path of walking."

64.     But, the way was clear for pedestrians to come and go around them and many people were
in fact coming and going around them because it was Christmas Eve.

65.     Suddenly the pleasant scene was shattered when Officer Vincent Norris rolled up in his
police cruiser and in a furious manner yelled at Mr. Agnew and the others to leave.

66.     Officer Norris is known to have arrested several other young black men in the area for incommoding.

67.     Officer Norris is the same officer who arrested Mr. Dennis a month earlier on Thanksgiving Eve for incommoding in his yard which is a few doors down the street from where Officer Norris arrested Mr. Agnew.

68.     Mr. Agnew explained that they were simply taking the air and smoking outside because his daughter had asthma and he did not smoke around her.

69.     He explained that the mother lived there and they had every right to be there.

70.     Enraged, Officer Norris screamed at Mr. Agnew and the others to leave because, as he said, they were "blocking passage."

71.     Because the statute vests unlimited discretion in law enforcement officers to determine whether a person on the sidewalk or in a doorway is "crowding, obstructing, or incommoding" and Officer Norris exercised his discretion to classify Mr. Agnew as "crowding, obstructing, or incommoding" the statute applied to Mr. Agnew by the officer.

72.     Officer Norris then instructed his partner, Officer Tiarra Smith, to arrest Mr. Agnew for incommoding under D.C. Code § 22-1307.

73.     Officer Smith then arrested Mr. Agnew for incommoding.

## Mr. Agnew at the Station on Christmas Eve

74.     The MPD officers then transported Mr. Agnew to the 7th District station arriving there about 7:00 pm.

75.     Mr. Agnew was fingerprinted and placed in a holding cell with other persons.

76.     After about three hours Mr. Agnew was released on citation release under D.C. Code § 23-1110(b).

## Mr. Agnew charged and prosecuted; case DWIP'ed

77.     Mr. Agnew was charged by information sworn by Officer Smith on 1/9/2015 by the OAG with incommoding under D.C. Code § 22-1307.

78.     The information did not specify the subsection, only D.C. Code § 13-1307. [or, 22-1307?]

79.     Mr. Agnew appeared at court for arraignment on 1/14/2015 and the judicial officer released him on PR pending trial.

80.     Mr. Agnew appeared for trial on 3/2/2015 and the case was dismissed for want of prosecution.

## Mr. Dennis' Arrest on Thanksgiving Eve

81.     Mr. Dennis's contact with MPD began about 8:30 pm on Thanksgiving Eve, 11/26/2014, when and his family were preparing their Thanksgiving celebration on Thanksgiving Eve, at their home at 3130 Buena Vista Terrace, SE in Washington, DC.

82.     Mr. Dennis had stepped outside for a moment and he was standing in the yard on a ramp a few feet in front of the porch to his apartment building getting a breath of evening air, taking a break from the cooking.

83.     The way was clear for pedestrians to come and go.

84.     No one was trying to come up the ramp.

85.     If someone had come by, Mr. Dennis would have moved.

86.     The police report does not mention anyone who could not get past him.

87.     That holiday spirit vanished when Officer Vincent Norris rolled up in his police cruiser and in a furious manner yelled at Mr. Dennis and another man to leave.

88.     Officer Norris is known for having a quick temper that seems to control him.

89.     Officer Norris is known to have arrested several other young black men in the area for incommoding.

90.     He is the very same officer who arrested Mr. Agnew a few doors up the street just a month later.

91.     Mr. Dennis refused to move because, as he explained, he was simply taking the air in front of his home.

92.     The ramp is wide enough to allow two or three people to walk on it.

93.     "How can you tell me to move from the place where I live at?" Mr. Dennis says to Officer Norris.

94.     Because the statute vests unlimited discretion in law enforcement officers to determine whether a person on the sidewalk or in a doorway is "crowding, obstructing, or incommoding" and Officer Norris exercised his discretion to classify Mr. Dennis as "crowding, obstructing, or incommoding" the statute applied to Mr. Dennis.

95.     When Mr. Dennis refused to move, Officer Norris arrested him and put him into a van.

96.     As the MPD took him away, Mr. Dennis asked him why he was being arrested. "Blocking a passage," Officer Norris said "You're going with me."

97.     The Gerstein in Mr. Dennis's case authored by Officer Norris has the same operative language as the police report in Mr. Agnew's case which Officer Norris' partner authored, namely,

"Both of the males were standing in a manner that would cause a citizen or citizens trying to utilize the walkway to deviate from their path of walking."

### Mr. Dennis at the Station on Thanksgiving Eve

98.     The MPD officers then transported Mr. Dennis to the District station arriving there about 10:00 pm.

99.     Mr. Dennis was fingerprinted and placed in a holding cell with other persons.

100.    After several hours Mr. Dennis was released the next day on citation release under D.C. Code § 23-1110(b).

### Mr. Dennis charged and prosecuted; case DWIP'ed

101.    Based on an affidavit sworn by Officer Norris on 11/26/2014 Mr. Dennis was charged by information by the OAG with incommoding under D.C. Code § 22-1307 on 12/23/2014.

102.    The information did not specify the subsection, only D.C. Code § 22-1307.

103.    Mr. Dennis appeared at court for arraignment on 1/14/2015 and was released on PR pending trial.

104.    Mr. Dennis appeared for trial on 3/2/2015 and the case was dismissed for want of prosecution.

### Ms. Williamson's Arrest

105.    Ms. Williamson's contact with MPD began about 3:50 pm on 2/4/2015 on a commercial street at 2403 Martin Luther King, Jr. Ave., S.E.

106.    Officer Richardo Amos told Ms. Williamson to move from where she was standing on the sidewalk at 2403 Martin Luther King, Jr. Ave., S.E. because, as his police report reads, he observed her standing in front of the location "disrupting the smooth flow of pedestrian traffic."

107.    Figure 4 shows the commercial location where Ms. Williamson was arrested.



108.    Officer Amos' report does not state that he observed any people at all who were present at the location when he observed Ms. Williamson.

109.    Ms. Williamson was standing on the sidewalk and walking on the sidewalk when she was observed by Officer Amos.

110.    The way was clear for pedestrians to come and go.

111.    No one was trying to walk on the sidewalk where Ms. Williamson was.

112.    She was not blocking the passage or even obstructing it.

113.    If someone had come by, Ms. Williamson would have moved as needed.

114.    The police report does not mention anyone who could not get past her during his initial encounter with her.

115.    Officer Amos ordered Ms. Williamson to leave about 3:30 pm.

116.    Ms. Williamson continued walking and standing in the area but always allowing other people enjoying the area with her to have free movement.

117.    Officer Amos came back about half an hour later arrested Ms. Williamson because, as his report states, "he observed pedestrians having to maneuver around her to get by on the sidewalk, and because merchants were complaining about her in the area.

118.    Ms. Williamson tried explained to Officer Amos why she was doing nothing wrong and did not have to leave.

119.    Because the statute vests unlimited discretion in law enforcement officers to determine whether a person on the sidewalk or in a doorway is "crowding, obstructing, or incommoding" and Officer Amos exercised his discretion to classify Ms. Williamson as "crowding, obstructing, or incommoding" the statute applied to Ms. Williamson.

120.    Officer Amos arrested her for crowding, obstructing, or incommoding.

## Ms. Williamson at the 7th District Station

121.    The MPD officers then transported Ms. Williamson to the 7th District station arriving there about 4:00 pm.

122.    Ms. Williamson was fingerprinted and placed in a holding cell with other persons.

123.    Ms. Williamson was not released on citation release under D.C. Code § 23-1110(b).

124.    Ms. Williamson was held overnight and presented in Superior Court on 2/5/2015.

## Ms. Williamson charged and prosecuted; case DWIP'ed

125.    Ms. Williamson was charged by information by the OAG with incommoding under D.C. Code § 22-1307 on 12/23/2014.

126.    The information did not specify the subsection, only D.C. Code § 13-1307. [22-1307?]

127.    Ms. Williamson was released on conditions.

128.    Ms. Williamson appeared at court for arraignment on 2/19/2015 and was released on PR pending trial.

129.    Ms. Williamson appeared for trial on 3/13/2015 and the case was dismissed for want of prosecution.

## Substantive Allegations for Claims

## Claim 1

## § 1983 Liability of District of Columbia under the Fifth Amendment for unlawful prosecutions

130.    Mr. Agnew, Mr. Dennis, and Ms. Williamson adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

131.    The D.C. Council amended the incommoding statute effective 2011.

132.    The incommoding statute is facially unconstitutional under the Fifth Amendment.

133.    The incommoding statute is vague under the second prong of the vagueness doctrine, the arbitrary and discriminatory enforcement prong.

134.    The statute authorizes and even encourages arbitrary and discriminatory enforcement. The D.C. Council established minimal guidelines in the statute to govern law enforcement  and thus the D.C. Council necessarily entrusted lawmaking to the moment-to-moment judgment of the policeman on his beat

135.    Because the incommoding statute is facially unconstitutional under the Fifth Amendment it is a nullity.

136.    Each one of the Named Plaintiffs and the other members of the Arrest Class was arrested when the District enforced the facially unconstitutional incommoding statute against them by arresting them.

137.    Accordingly, the Named Plaintiffs and the other members of the Arrest Class are entitled to damages and other relief as set forth below.

## Claim 2

## § 1983 Liability of District of Columbia under the Fifth Amendment for unlawful prosecutions

138.    Mr. Agnew, Mr. Dennis, and Ms. Williamson adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

139.    The incommoding statute is facially unconstitutional under the second prong of the vagueness doctrine, the arbitrary and discriminatory enforcement prong, in violation of the Fifth Amendment but still the District through its Attorney General's Office prosecuted Mr. Agnew, Mr. Dennis, and Ms. Williamson and the other members of the Prosecution Class under the incommoding statute.

140.    Accordingly, Mr. Agnew, Mr. Dennis, and Ms. Williamson and the other members of the Prosecution Class are entitled to damages and other relief as set forth below.

## Rule 23 Class Allegations

**141.**     Mr. Agnew, Mr. Dennis, and Ms. Williamson  on behalf of themselves and the Arrest Class bring this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was arrested for  violation of the incommoding statute.

**142.**     Mr. Agnew, Mr. Dennis, and Ms. Williamson on behalf of themselves and the other members of the Prosecution Class bring this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person who: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was prosecuted for a violation of the incommoding statute by the Attorney General of the District of Columbia or with his consent.

**143.**     Certification of these classes under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District and Chief Lanier will benefit each and every plaintiff and class member.

**144.**     The classes are entitled to injunctive relief including an injunction prohibiting enforcement of the incommoding statute and sealing of the arrest records of class members for their arrests under the incommoding statute.

**145.**     Mr. Agnew, Mr. Dennis, and Ms. Williamson and the classes are entitled to declaratory judgment against the District that D.C. Code § 22-1307 is facially unconstitutional and their arrests and prosecutions on those charges are a nullity.

**146.**     Certification of these classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

**147.**     These classes are entitled to monetary relief.

**148.**     Regarding Mr. Agnew, Mr. Dennis, and Ms. Williamson and these classes, there are no individual questions on the issue of liability, because all members of these classes are injured by the same policy and practices.

**149.**     Among the questions of law and fact common to the classes are:

a)        whether the incommoding statute D.C. Code § 22-1307 is facially unconstitutionally because it violates the second prong of the vagueness doctrine under the Fifth Amendment, the arbitrary and discriminatory enforcement prong;

b)        whether enacting a statute that is facially unconstitutional under the second prong of the vagueness doctrine violates the Fifth Amendment;

c)        whether the District of Columbia violates the Fifth Amendment by enforcing its facially unconstitutional incommoding statute by arresting people for violating the incommoding statute;

d)        whether the District of Columbia violates the Fifth Amendment by enforcing its facially unconstitutional incommoding statute by prosecuting people for violating the incommoding statute;

e)        whether Named Plaintiffs and the members of the classes and future members are entitled to equitable relief, and, if so, what is the nature of that relief.

150.    Each of the Arrest Class and the Prosecution Class is so numerous that joinder of all members is impracticable.  The exact number of the members Arrest Class and the Prosecution Class members is unknown to plaintiffs at this time but the number of persons who "posted and forfeited" for incommoding each year numbers at least 50.

151.    Each of Mr. Agnew, Mr. Dennis, and Ms. Williamson's arrest claims are typical of the claims of the other members of the Arrest Class, because Mr. Agnew, Mr. Dennis, and Ms. Williamson and all other members of the Arrest Class were injured by exactly the same means, the facial unconstitutionality of the incommoding statute.

152.    Each of Mr. Agnew, Mr. Dennis, Ms. Williamson's prosecution claims are typical of the claims of the other members of the Prosecution Class, because Mr. Agnew, Mr. Dennis, and Ms. Williamson and all other members of the Prosecution Class were injured by exactly the same means, the facial unconstitutionality of the District's incommoding statute.

153.    Each of Mr. Agnew, Mr. Dennis, and Ms. Williamson on behalf of themselves and the other members of the Arrest Class and the Prosecution Class will fairly and adequately protect the interests of the members of the Classes and they have retained counsel who are competent and experienced in complex federal civil rights class action litigation.

154.    Each of Mr. Agnew, Mr. Dennis, and Ms. Williamson on behalf of themselves and the Arrest Class and the Prosecution Class has no interests that are contrary to or in conflict with those of the Classes.

## Class Relief Demands

Mr. Agnew, Mr. Dennis, and Ms. Williamson on behalf of themselves and all other members of the Arrest Class and the Prosecution Class respectfully request that this Court grant the following relief:

**A.**          Enter judgment in their favor on all of their claims;

**B.**          Declare the incommoding statute under D.C. Code § 22-1307 unconstitutionally vague under the Fifth Amendment and enjoin the District from implementing any provision of D.C. Code § 22-1307.

**C.**          Award Mr. Agnew, Mr. Dennis, and Ms. Williamson  and the putative class members' nominal damages in connection with any declaration that D.C. Code § 22-1307 is unconstitutional or overbroad.

**D.**          Grant a jury trial on all claims so triable.

**E.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Arrest Class and the Prosecution Class, and designating Mr. Agnew, Mr. Dennis, and Ms. Williamson  as the proper representatives of the Arrest Class, and designating Mr. Agnew, Mr. Dennis, and Ms. Williamson as the proper representatives of the Prosecution Class, and appointing William Claiborne and Michael Bruckheim and Lynn Cunningham as class counsel of both classes.

**F.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**G.**          Award all the Arrest Class and the Prosecution Class plaintiffs and class members injunctive relief in the form of sealing their arrest records for incommoding and declaring the arrests a nullity;

**H.**         Award all plaintiffs and class members compensatory and consequential

damages in an amount to be determined at trial;

**I.**         Award plaintiffs attorneys' fees and costs incurred in bringing this action under

42 U.S.C. § 1988 or as determined under the "common fund" rule; and

**J.**         Grant such other relief as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted,<br><br>/s/ William Claiborne<br>**WILLIAM CLAIBORNE**<br>D.C. Bar # 446579<br><br>Counsel for Named Plaintiffs<br>and the Classes<br><br>2020 Pennsylvania Ave., N.W<br>Suite 395<br>Washington, DC 20006<br>Phone 202/824-0700<br><br>Email claibornelaw@gmail.com | Respectfully submitted,<br><br>/s/ Michael Bruckheim<br>**MICHAEL BRUCKHEIM**<br>D.C. Bar # 455192.<br><br>Counsel for Named Plaintiffs<br>and the Classes<br><br>1 Church St<br># 910<br>Rockville, MD 20850<br>Phone (240) 753-8222 |

| | |
|---|---|
| Respectfully submitted,<br><br><br>/s/ Lynn E. Cunningham<br>LYNN E. CUNNINGHAM<br>DC Bar # 221598<br><br>Counsel for Named Plaintiffs<br>and the Classes<br><br>306 Westview Drive,<br>Dubois, WY 82513<br>Phone: 307-431-4158<br><br>Email: lcunningham@law.gwu.edu | |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.


/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Named Plaintiffs
and the Classes