## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARYL THOMAS AGNEW, *et al.*,<br><br>     *Plaintiffs,*<br><br>v.<br><br>GOVERNMENT OF THE<br>DISTRICT OF COLUMBIA,<br><br>     *Defendant.* | Civil Action No. 15-340 (ABJ) |

## THE DISTRICT OF COLUMBIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

## INTRODUCTION

Although lengthy, plaintiffs' opposition to Defendant the District of Columbia's Motion to Dismiss Plaintiffs' Third Amended Complaint rests on three unavailing themes. First, plaintiffs contend that D.C. Code § 22-1307(a)[1] does not objectively define the conduct it prohibits and thus encourages arbitrary and discriminatory enforcement. Second, plaintiffs argue that because the statute does not contain a *mens rea* element it is constitutionally deficient. And third, plaintiffs contend they are not required to show that § 22-1307(a) is impermissibly vague in all applications to bring a facial challenge to the statute.

---

[1]   The statute, in relevant part, makes it unlawful for a person to "crowd, obstruct, or incommode … [a] sidewalk [or] [t]he entrance of any public or private building … and [t]o continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding." § 22-1307(a).

Each of plaintiffs' arguments is unsuccessful. As described in the District of Columbia's (the District) Motion to Dismiss, D.C. Code § 22-1307(a) contains objective terms no different from those upheld by other courts. Those terms stand in contrast to the subjective and ambiguous terms found unconstitutionally vague in cases cited by plaintiffs. Further, § 22-1307(a) does contain a *mens rea* element, and even if it did not, that omission is not fatal as plaintiffs argue. Indeed, the statute's dispersal order provision does not amplify any supposed vagueness, but instead functions as a means of determining an individual's intent to block passage and provides no more discretion than that provided by the language of the statute itself. Finally, plaintiffs' facial challenge requires a stringent showing of unconstitutionality; plaintiffs cannot advance a facial challenge against the District under *Monell* but claim only that § 22-1307(a) is vague as applied to their circumstances. This is especially so when plaintiffs' allegations make clear that their true concern is with the manner in which the statute was enforced in their specific circumstances, though they no longer challenge the manner of their individual arrests or the probable cause determinations underlying those arrests.

In sum, plaintiffs fail to present a coherent explanation for why this Court should find D.C. Code § 22-1307(a) unconstitutionally vague under the Fifth Amendment when the statute provides objective standards by which police officers can determine whether individuals are crowding, obstructing, or incommoding the use of a sidewalk or entrance.

## ARGUMENT

I.  <u>The Language of D.C. Code § 22-1307(a) Does Not Provide Police Officers With Unlimited Discretion.</u>

In challenging their arrests under D.C. Code § 22-1307(a), plaintiffs[2] fail to truly contend with the language of the statute. By way of background, "vague" in the Fifth Amendment context means not that a statute "requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather … that no standard of conduct is specified at all." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982). A statute can be found unconstitutionally vague if it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

As described in the District's Motion to Dismiss, D.C. Code § 22-1307(a) makes it objectively clear to enforcing officers—both by its terms, the context in which those terms appear, and the manner of its amendment—that it prohibits conduct inhibiting the ability of others to pass. *See* Def.'s Mem. in Supp. Mot. Dismiss, at 10-11 (referring to dictionary definitions of "crowd," "obstruct," and "incommode"). As such, an officer's determination is not "wholly subjective" as the statute provides sufficient "narrowing context" and "settled legal meanings." *Williams*, 553 U.S. at 304. That understanding of the statute is bolstered by the fact that the District of Columbia Court of Appeals has twice referred to the offense as

---

[2]    Plaintiffs here are three individuals, Daryl Thomas Agnew, Alex Dennis, and Rayneka Williamson, who were arrested by District of Columbia Metropolitan Police Department officers for violations of § 22-1307(a). *See* Def.'s Mem. in Supp. Mot. Dismiss, at 4-6 [37-1].

one of "blocking passage," a common-sense construction that speaks to the statute's central purpose and prohibition. *See Duffey v. District of Columbia*, 93 A.2d 1273, 1274 (D.C. 2014) (referring to "statute prohibiting the blocking of passages"); *Tetaz v. District of Columbia*, 976 A.2d 907, 911 (D.C. 2009) (referring to "blocking or impeding entry").

And plaintiffs ignore that other courts have found similar language constitutional. *See, e.g.*, *Cameron v. Johnson*, 390 U.S. 611, 616 (1968) (rejecting vagueness challenge to the phrase "obstruct or unreasonably interfere"); *Betancourt v. Bloomberg*, 448 F.3d 547, 553 (2d Cir. 2006) (same for "obstruction"); *Hoffman v. Hunt*, 126 F.3d 575, 581 (4th Cir. 1997) (same for "obstruct" and "block"); *Pro-Choice Network v. Schenk*, 67 F.3d 359, 373 (2d Cir. 1994) (same for "crowding"). In sum, § 22-1307(a) does not contain the "fundamental subjectivity" indicative of constitutional infirmity. *United States v. Bronstein*, 151 F. Supp. 3d 31, 38 (D.D.C. 2015).

Against this, the cases cited by plaintiffs refer to far more ambiguous and generalized prohibitions. *See City of Chicago v. Morales*, 527 U.S. 41, 61-62 (1999) (ordinance permitting loitering "with no apparent purpose" unlawful); *Kolender v. Lawson*, 461 U.S. 352, 359 (1983) (finding "credible and reliable" information impermissibly vague); *Coates v. City of Cincinnati*, 402 U.S. 611, 613 (1971) (ordinance prohibiting conduct that would "annoy" unlawful).

Indeed, plaintiffs rely heavily on *Shuttlesworth v. City of Birmingham*, 382 U.S. 87 (1965). There, however, the United States Supreme Court upheld part of a

statute for which the Alabama Court of Appeals provided a limiting construction that the ordinance "is directed at obstructing the free passage over, on or along a street or sidewalk by the manner in which a person accused stands, loiters, or walks thereupon" and "that mere refusal to move on after a police officer's requesting that a person standing or loitering should do so is not enough to support the offense. There must also be a showing of the accused's blocking free passage." *Id.* at 91 (citing *Middlebrooks v. City of Birmingham*, 170 So. 2d 424, 426 (Ala. App. 1964)). So too here, § 22-1307(a) prohibits no more activity than that criminalized by the limited construction upheld in *Shuttlesworth*; the statute is directed at individuals blocking passage, requires a showing of that blocking, and requires the individual to refuse to obey a dispersal order.

Lastly, plaintiffs raise concerns that § 22-1307(a) criminalizes "a substantial amount of constitutionally protected conduct." *See Morales*, 527 U.S. at 52. That concern, however, goes to whether D.C. Code § 22-1307(a) is overbroad (a claim voluntarily dismissed by plaintiffs),[3] not whether it comports with the due process requirements of the Fifth Amendment. *See Hoffman Estates*, 455 U.S. at 494 ("[A] court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail."); *see also American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 609 (6th Cir. 2005) (overbroad provision "brings too much

---

[3]      In an Order issued on October 5, 2015, the Court granted plaintiffs' request to voluntarily dismiss plaintiffs' Claim 1 based on alleged First Amendment violations under the overbreadth doctrine. *See* ECF Nos. 22, 23.

protected activity within its purview" rather than being "unclear about which activities fall within its purview").

## II.   The Statute Contains a *Mens Rea* Element; Alternatively, The Lack of One Does Not Render The Statute Fatally Suspect.

Plaintiffs make much of the fact that, because they believe D.C. Code § 22-1307(a) lacks a *mens rea* element, the statute is unconstitutional under the arbitrary and discriminatory enforcement prong of the vagueness doctrine. *See Williams*, 553 U.S. at 304. Plaintiffs argue a *mens rea* element is required for a statute to pass muster under a vagueness analysis and contend the District's statute lacks that feature, even though it requires an individual to *intentionally* disregard an officer's instruction. Pls'. Opp. at 15-16 [40]. This is an incorrect reading of both § 22-1307(a) as well as how *mens rea* fits into the constitutional vagueness analysis.

As an initial matter, § 22-1307(a) does include a *mens rea* element. The statute requires an individual to disregard a law enforcement officer's instruction to cease crowding, obstructing, or incommoding. *See* D.C. Code § 22-1307(a) ("It is unlawful for a person … [t]o continue or resume the crowding, obstructing, or incommoding after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding."). That language minimizes the risk that an individual who is unintentionally blocking a sidewalk will fall under the statute's prohibition; an individual engaged in unintentional or inadvertent blocking will simply move when asked by the officer to do so, and will avoid resuming the prohibited conduct. *See Coalutti v. Franklin*, 439 U.S. 379, 395 n.15 (1979) (*mens*

6

*rea element* "relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware") (citations omitted).

The D.C. Council Committee on Public Safety and the Judiciary agreed, concluding that the instruction "prevents the arrest of individuals who are not *intentionally* trying to obstruct the passage of others and are prepared to alter their conduct when instructed to do so" and "eliminates any problems in proving the improper intent of a person who persists in blocking after a warning to desist." Rep. on Bill 18-425, at 76 [37-3] (emphasis added). Indeed, the District of Columbia Court of Appeals recognized, in interpreting a prior version of § 22-1307, that an "obvious inference" of intent could be drawn from an individual's disregard of a police officer's warning regarding blocking passage. *See Tetaz*, 976 A.2d at 911.

Further, even if the plain language of the statute and its legislative construction are insufficient for the Court to find a *mens rea* element, its absence is not fatal. Relying on *Morales*, plaintiffs contend that a criminal statute containing no *mens rea* element must be struck down under a vagueness analysis. However, that case discusses whether absence of a *mens rea* element makes a facial challenge to a statute (as opposed to an as-applied challenge) *appropriate* in the first instance, not whether the statute in question is ultimately constitutional. *See Morales*, 527 U.S. at 55. The crucial inquiry is, of course, the language of the statute in question, and the *Morales* court appropriately relied on the definition of "loitering" in conducting its analysis. *Id.* at 60-61. As such, in other cases cited by plaintiffs, the inquiry into a *mens rea* element either followed careful analysis of the vagueness of

the statutory language, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972), or was absent altogether. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Inclusion of such an element is not a prerequisite to determining vagueness, and in any respect, the language of D.C. Code § 22-1307(a) is not "on the margins" but is well within the bounds of the Fifth Amendment.

Plaintiffs similarly conflate whether disregard of a dispersal order implies intent to violate the statute (as the District argues) with whether the statute's dispersal order narrows an officer's discretion. *See Leal v. Town of Cicero*, 2000 WL 343232, at *2-3 (N.D. Ill. 2000). The dispersal order in the statute does not increase an officer's discretion, but rather, as discussed above, serves as a notification mechanism to prevent unknowing violations of the statute. *See Coalutti*, 439 U.S. at 395 n.15. Because the dispersal order is explicitly tied to the language of the statute, it requires an officer to first objectively determine whether an individual is blocking passage. If an officer makes that determination improperly (*i.e.*, without probable cause), an individual's remedy is a cause of action for false arrest under the Fourth Amendment, not a facial challenge to the statute. *See Williams*, 553 U.S. at 306 ("The reality that virtually all statutes will generate interpretive difficulties at the margins is addressed not by vagueness doctrine, but by the requirement of proof beyond a reasonable doubt."). And by way of contrast, in one case heavily relied upon by plaintiffs, *NAAC Anne Arundel Cnty. Branch v. City of Annapolis*, 133 F. Supp. 2d 795 (D. Md. 2001), the ordinance in question required immediate dispersal based on an officer's interpretation of vague criteria, specifically whether

an individual was seen acting in a manner "associated with drug related activity." 133 F. Supp. 2d at 808. However here, D.C. Code § 22-1307(a) requires an individual to specifically disregard an officer's instruction to stop the prohibited conduct before an arrest can be made. In other words, before making an arrest an officer first must observe conduct in violation of § 22-1307(a), then give a dispersal order, and then observe intent to violate the statute as indicated by failure to comply with the initial dispersal order.

## III.  Plaintiffs Cannot Succeed In A Facial Challenge Unless They Meet a High Standard.

To press a facial challenge, a plaintiff must show a statute is "impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 495. Facial challenges are "disfavored" because they "often rest on speculation." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). In addition, facial challenges involve both a broader remedy than as-applied challenges, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010), and implicate prudential third-party standing rules regarding whether a party may "challenge [a] statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the [c]ourt." *Williams v. Lew*, 819 F.3d 446, 475 (D.C. Cir. 2016); *see also Bronstein*, 151 F. Supp. 3d at 38. Although the Supreme Court recently expressed skepticism regarding the "elevated bar for facial challenges," *see U.S. Telecom Ass'n v. Fed. Commc'ns Comm'n*, 825 F.3d 674, 735-36 (D.C. Cir. 2016) (citing *Johnson v. United States*, 135 S. Ct. 2551 (2015)), the Court declined to overrule *Hoffman Estates*, and this Court is compelled to follow it here. *See, e.g.,*

*Bronstein*, 151 F. Supp. 3d at 38. Further, as described below, such a stringent showing is logical when evaluated against the standard for municipal liability.

To state a claim for municipal liability under Section 1983, plaintiffs must allege (1) a predicate constitutional violation, (2) a custom or policy of the District, and (3) that the District's custom or policy was the "moving force" behind the alleged constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). As the District argued in its Motion to Dismiss, plaintiffs have not met this standard. *See* Def.'s Mem. in Supp. Mot. Dismiss, at 18-20. In fact, plaintiffs do not respond at all to the District's argument that they have failed to plead a District custom or policy where they instead allege facts regarding an individual officer's actions, *id.* at 19, and that argument should be deemed conceded. *See Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011).

Moreover, even if plaintiffs are permitted to proceed under their facial challenge, requiring a strict showing of unconstitutionality prevents collapsing *Monell's* causation requirement (*i.e.*, the requirement that the policy be the "moving force" behind the alleged violation). Said differently, if a plaintiff is not required to prove that a statute is unconstitutionally vague in *all* of its applications, a plaintiff could bring a claim removed from its own alleged harm and circumvent the requirement of making "the causal connection between the statute and the constitutional violation." *Hodges v. Government of District of Columbia*, 975 F. Supp. 2d 33, 56 (D.D.C. 2013); *see also Daskalea v. Wash. Humane Soc'y*, 710 F.

Supp. 2d 32, 43 (D.D.C. 2010) ("Plaintiffs have not, however, alleged … that they were damaged in any way by the *enactment* of the allegedly unconstitutional statute in this case."). Requiring that a plaintiff show a statute is unconstitutional in all its applications (including a plaintiff's own factual situation) ensures that a plaintiff does not improperly sidestep alleging facts supporting the statute's "affirmative link" to its claimed harms. *See Baker*, 326 F.3d at 1306.

Here, plaintiffs cannot make such a heightened showing, as D.C. Code § 22-1307(a) provides sufficient "statutory definitions, narrowing context, [and] settled legal meanings" to make its prohibitions reasonably clear to enforcing police officers. *Williams*, 553 U.S. at 304. And further confusing the issue, plaintiffs willingly have forgone their as-applied challenge in favor of a facial one. Pls.' Opp. at 2-3. This is despite the fact that plaintiffs continue to allege facts indicating their alleged harms were not caused by the *enactment* of D.C. Code § 22-1307(a), but by one officer's alleged personal animus, facts that at best are applicable to an as-applied challenge. Third Am. Compl. ¶¶ 66-67, 88-90; *see Hodges*, 975 F. Supp. 2d at 56. Plaintiffs cannot have it both ways; they must either meet the heightened showing to prevail on a facial challenge or bring an as-applied challenged tailored to their specific alleged harms.

## CONCLUSION

For the foregoing reasons, and the reasons presented in the District's Motion to Dismiss, the Court should dismiss plaintiffs' Third Amended Complaint.

Dated: December 20, 2016.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Deputy Attorney General
Public Interest Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON, Bar No. 453765
Chief, Equity Section

/s/ Gregory M. Cumming
GREGORY M. CUMMING, Bar No. 1018173
ESTHER YONG MCGRAW, Bar No. 988479
Assistant Attorneys General
441 Fourth Street, N.W.
Suite 630 South
Washington, D.C. 20001
(202) 724-6627
(202) 715-7769 (fax)
gregory.cumming@dc.gov
esther.mcgraw@dc.gov

*Counsel for Defendant the District of Columbia*